**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                          :
                                                      :
                     Plaintiff,                       :    Civil Action No. 22-cv-2697
                                                      :
v.                                                    :    **COMPLAINT FOR VIOLATIONS OF**
                                                      :    **SECTIONS 14(a) AND 20(a) OF THE**
MANDIANT, INC., ENRIQUE SALEM,                        :    **SECURITIES EXCHANGE ACT OF**
KEVIN MANDIA, KIMBERLY ALEXY,                         :    **1934**
SARA ANDREWS, RONALD E.F. CODD,                       :
ARTHUR W. COVIELLO, JR., ADRIAN                       :    **JURY TRIAL DEMANDED**
MCDERMOTT, VIRAL PATEL, and                           :
ROBERT SWITZ,                                         :
                                                      :
                     Defendants.                      :
--------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.       This is an action brought by Plaintiff against Mandiant, Inc. ("Mandiant or the

"Company") and the members Mandiant's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of Mandiant by affiliates of Google LLC ("Google")

2.       Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 31, 2022 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Dupin Inc. ("Merger Sub"), a wholly-owned subsidiary of Google, will merge with and into Mandiant with Mandiant surviving as a wholly-owned subsidiary of Google (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 7, 2022 (the "Merger Agreement"), each Mandiant stockholder will receive $23.00 in cash (the "Merger Consideration") for each Mandiant share owned.

1.      As discussed below, Defendants have asked Mandiant's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Mandiant's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Mandiant is traded on the NASDAQ Global Select Market, which is headquartered in this District. In addition, the Company's proxy solicitor, MacKenzie Partners, Inc., is also headquartered in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of Mandiant stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant Enrique Salem has served as a member of the Board since February 2013 and is the Chairman of the Board.

9.      Individual Defendant Kevin Mandia has served as a member of the Board since February 2016 and is the Company's Chief Executive Officer.

10.     Individual Defendant Kimberly Alexy has served as a member of the Board since January 2015.

11.     Individual Defendant Sara Andrews has served as a member of the Board since August 2020.

12.     Individual Defendant Ronald E.F. Codd has served as a member of the Board since July 2012.

13.     Individual Defendant Arthur W. Coviello, Jr. has served as a member of the Board since December 2020.

14.     Individual Defendant Adrian McDermott has served as a member of the Board since February 2019.

15.     Individual Defendant Viral Patel has served as a member of the Board since December 2020.

16.     Individual Defendant Robert Switz has served as a member of the Board since September 2017.

17.     Defendant Mandiant is a New Jersey corporation and maintains its principal offices at 11951 Freedom Drive, 6th Floor, Reston, Virginia 20190.  The Company's stock trades on the NASDAQ Global Select Market under the symbol "MNDT."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     **The Proposed Transaction**

20.     Mandiant engages in the provision of cyber defense solutions.  The Company, through the Mandiant Advantage SaaS platform, delivers current intelligence, automation of alert investigation, and prioritization and validation of security controls products from various vendors. Its products and services include Advantage Platform, a multi-vendor XDR platform that delivers the company's expertise and frontline intelligence to security teams; Managed Defense, a solution

with comprehensive protection from advanced and emerging threats; Mandiant consulting services

in the areas of threats and risk related to cyber security; and Mandiant Academy, which trains

security team to protect and defend their enterprises against targeted cyber attacks. The company

serves enterprises, governments, and law enforcement agencies worldwide. Mandiant, Inc. has a

strategic partnership with Splunk Inc. to help enterprise organizations validate their security stacks

and defend against emerging threats. The Company was formerly known as FireEye, Inc. and

changed its name to Mandiant, Inc. in October 2021. Mandiant was founded in 2004 and is based

in Reston Virginia.

21.    On March 8, 2022, the Company announced the Proposed Transaction:

**RESTON, Va., March 8, 2022** – Mandiant, Inc. (NASDAQ:
MNDT) today announced that it has entered into a definitive
agreement to be acquired by Google LLC for $23.00 per share in an
all-cash transaction valued at approximately $5.4 billion, inclusive
of Mandiant's net cash. The offer price represents a 57% premium
to the undisturbed 10-day trailing volume weighted average price as
of February 7, 2022, the last full trading day prior to published
market speculation regarding a potential sale of the Company. Upon
the close of the acquisition, Mandiant will join Google Cloud.

For the past 18 years, Mandiant has delivered unparalleled frontline
expertise and industry-leading threat intelligence. Mandiant's more
than 600 consultants currently respond to thousands of security
breaches each year. Paired with research from more than 300
intelligence analysts, these resulting insights are what power
Mandiant's dynamic cyber defense solutions – delivered through the
managed multi-vendor XDR platform, Mandiant Advantage.

Google Cloud has made security the cornerstone of its commitment
to customers and users around the world – building cloud-native
security into the foundation of its technology to block malware,
phishing attempts and potential cyber attacks at scale. The Mandiant
acquisition underscores Google Cloud's commitment to advancing
its security offerings to better protect and advise customers across
their on-premise and cloud environments.

The acquisition will complement Google Cloud's existing strengths
in security. Together with Mandiant, Google Cloud will deliver an

end-to-end security operations suite with even greater capabilities as well as advisory services helping customers address critical security challenges and stay protected at every stage of the security lifecycle.

"Cyber security is a mission, and we believe it's one of the most important of our generation. Google Cloud shares our mission-driven culture to bring security to every organization," said Kevin Mandia, CEO, Mandiant. "Together, we will deliver our expertise and intelligence at scale via the Mandiant Advantage SaaS platform, as part of the Google Cloud security portfolio. These efforts will help organizations to effectively, efficiently and continuously manage and configure their complex mix of security products."

"The Mandiant brand is synonymous with unmatched insights for organizations seeking to keep themselves secure in a constantly changing environment," said Thomas Kurian, CEO, Google Cloud. "This is an opportunity to deliver an end-to-end security operations suite and extend one of the best consulting organizations in the world. Together we can make a profound impact in securing the cloud, accelerating the adoption of cloud computing, and ultimately make the world safer."

The acquisition is subject to customary closing conditions, including the receipt of Mandiant stockholder and regulatory approvals, and is expected to close later this year. Goldman Sachs & Co. LLC is acting as exclusive financial advisor, and Wilson Sonsini Goodrich & Rosati P.C. is acting as legal advisor to Mandiant.

\* \* \*

22.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Mandiant's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

23.     On March 31, 2022, Mandiant filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.     The Proxy Statement fails to provide material information concerning financial projections by Mandiant management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Mandiant management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBIT, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP

metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for Mandiant; (ii) the inputs and assumptions underlying the use of a range of perpetuity growth rates from 2.0% to 4.0%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 9.25% to 11.25%; (iv) the inputs and assumptions underlying the use of the range of EBITDA multiples ranging from 6.9x to 12.0x; (v) the certain company-specific inputs, including the Company's target capital structure weightings, the cost of long-term debt, after-tax yield on permanent excess cash, future applicable marginal cash tax rate and a beta for the Company; (vi) the Company's net debt as of December 31, 2021; and (vii) the number of fully diluted outstanding shares of Mandiant common stock.

30.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the use of EV/NTM revenue multiples of 6.0x to 8.0x; (ii) the range of illustrative equity values for Mandiant as of December 31 for each of the fiscal years 2022 to 2024; (iii) the number of projected year-end fully diluted shares of Mandiant common stock for each of the fiscal years 2022 to 2024; (iv) the implied future share price of the Company for December 31, 2022 to December 31, 2024; (v) the inputs and assumptions underlying the use of 9.5% discount rate; (vi) the Company's cost of equity.

31.     With respect to Goldman Sachs's *Precedent Transaction Multiples* analysis, the Proxy Statement fails to disclose the individual financial metrics for the companies observed by Goldman Sachs in the analysis, including the total consideration paid, and the NTM revenue for each company selected and observed by Goldman Sachs in the analysis.

32.     With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions reviewed and analyzed, and the consideration and the premia paid in those transactions.

33.     With respect to Goldman Sachs' *Selected Public Company Comparables Analysis*, the Proxy Statement fails to disclose the enterprise value and and revenue of each comparable company selected by Goldman Sachs in the analysis.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.   The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.   Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.   Plaintiff has no adequate

11

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Mandiant within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Mandiant, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Mandiant, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Mandiant, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 1, 2022

**MELWANI & CHAN LLP**

By:   */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*